UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

JOHN M. LOVELADY,

AND

BEVERLY C. LOVELADY,

      Plaintiffs,

v.                            Case No.: 4:18cv18

FIVE STAR QUALITY CARE-VA, LLC,
d/b/a DOMINION VILLAGE OF
WILLIAMSBURG,

      Defendant.

## OPINION AND ORDER

This matter is before the Court on a Motion to Remand filed by Plaintiffs John M. Lovelady ("Mr. Lovelady") and Beverly C. Lovelady ("Mrs. Lovelady") (collectively "Plaintiffs"), ECF No. 10, and Five Star Quality Care-VA, LLC, d/b/a Dominion Village of Williamsburg's ("Dominion Village" or "Defendant") Motion to Dismiss Punitive Damages Claim, ECF No. 8, Motion to Compel Arbitration, ECF No. 7, and a Motion for Protective Order, ECF No. 21. For the reasons noted below, the Court **DENIES** Plaintiffs' Motion to Remand, **GRANTS** Defendant's Motion to Compel Arbitration and **STAYS** these proceedings pending completion of arbitration, **DENIES AS MOOT** Defendant's Motion to Dismiss Punitive Damages Claim, and **DENIES AS MOOT** Defendant's

1

Motion for Protective Order.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

In January 2018, Plaintiffs filed suit against Defendant, a licensed assisted living facility, in the Circuit Court for the City of Williamsburg and County of James City ("Circuit Court"). See Compl., ECF No. 1-1. Mr. Lovelady is a resident of Virginia who is seventy-nine years old and suffers from Alzheimer's Disease. Id. ¶ 1. Mrs. Lovelady is Mr. Lovelady's spouse and his attorney-in-fact. Id. ¶ 2. She is also a resident of Virginia. Id. Defendant is a limited liability company ("LLC") organized under the laws of Delaware whose sole member has a principal place of business in Massachusetts. Id. ¶ 3; Notice of Removal ¶ 8, ECF No. 1-2. This suit concerns Plaintiffs' effort to recover damages arising from breach of contract and the allegedly unlawful termination of Mr. Lovelady's Residency Agreement. Compl. at 2.

In December 2016, Plaintiffs executed a Residency Agreement with Defendant to allow Mr. Lovelady to live at Dominion Village. Id. ¶ 5-6. Under the Residency Agreement, Mr. Lovelady is the "Resident," and Mrs. Lovelady is the

_____

[1] The facts recited here are stated in the light most favorable to Plaintiffs, the party seeking remand. See Venezuela v. Massimo Zanetti Beverage USA, Inc., 525 F. Supp. 2d 781, 783 n.1 (E.D. Va. 2007) ("On a motion to remand, because the burden to prove jurisdiction rests on the party opposing remand, the facts are stated in the light most favorable to the party seeking remand." (citing Booth v. Furlough, Inc., 995 F. Supp. 629, 630 (E.D. Va. 1998); Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994))).

"Responsible Person," meaning that she is the person who has agreed to pay Defendant all amounts due on behalf of Mr. Lovelady. Id. at 9. Plaintiffs have attached a copy of the Residency Agreement that shows that Mrs. Lovelady signed the Agreement on behalf of her husband using her name and the letters "POA" on the line for "Signature of John Lovelady." Res. Agr. at 9. She also signed the Agreement in her capacity as the "Responsible Person" on the line provided for her. Id. On the same page, she initialed in a box next to the statement "You acknowledge that you have signed a separate Arbitration Agreement." Id.

Defendant has also submitted the Arbitration Agreement specifically referenced in the Residency Agreement. See Arb. Agr., ECF No. 1-3. This document has spaces for four signatures: "Resident One," "Resident Two," "Resident's Authorized Representative," and "Five Star Quality Care, Inc." Id. at 13. The only signatures that appear in this document are Mrs. Lovelady's on the "Resident's Authorized Representative" line and Executive Director Deirdre Lund's on the "Five Star Quality Care, Inc." line. Id.

From December 2016 until August 2017, Mr. Lovelady lived at Dominion Village. Compl. 2-3. In August 2017, Defendant unilaterally terminated and discharged Mr. Lovelady from Dominion Village, allegedly without a legal basis for doing so.

3

Id. at 2-3. Plaintiffs assert that Mr. Lovelady at all times abided by the Residency Agreement and the rules and policies of the Resident Handbook; he promptly paid all required fees; his care needs never exceeded the services that Defendant was required to provide under the Residency Agreement; and his residency never endangered the health, safety, or welfare of anyone. Id. at 3. According to Plaintiffs, the real reason Defendant discharged Mr. Lovelady was that Executive Director Deirdre Lund disliked Mrs. Lovelady's advocacy for Mr. Lovelady and other residents regarding the standards of cleanliness, hygiene, and care at Dominion Village. Id. They claim that this alleged retaliatory action violates the Standards for Licensed Assisted Living Facilities, which provides:

> The resident has the right to voice or file grievances, or both, with the facility and to make recommendations for changes in the policies and services of the facility. The residents shall be protected by the licensee or administrator, or both, from any form of coercion, discrimination, threats, or reprisal for having voiced or filed such grievances.

22 Va. Admin. Code 40-73-550(B).[2]

As a result of the alleged breach of contract and unlawful termination, Plaintiffs seek compensatory damages of $344,194.00. Compl. 4. They also request punitive damages of

---

[2] When Plaintiffs filed this action, the above standard was found at 22 Va. Admin Code § 40-72-540. In April 2018, the Standards for Licensed Assisted Living Facilities were repealed, and the above section was reauthorized at 22 Va. Admin. Code § 40-73-550(B). The Court will thus refer to the revised provision applicable to this case in place of the repealed section.

$350,000.00 for the "malicious, oppressive and unlawful" retaliatory action of discharging Mr. Lovelady after Plaintiffs exercised rights guaranteed to them by 22 Va. Admin. Code § 40-73-550(B). Id.

On February 13, 2018, Defendant filed a brief in the Circuit Court containing three pleadings: (1) Plea in Bar to Stay or Dismiss the Proceeding and Motion to Compel Arbitration ("Plea in Bar/Motion to Compel"),[3] (2) Demurrer of Plaintiffs' Punitive Damages Claim ("the Demurrer"), and (3) Answer and Affirmative Defenses. ECF No. 1-3. In the Plea in Bar/Motion to Compel, Defendant notes that the Residency Agreement provides for arbitration of disputes arising under the agreement that potentially involve more than $25,000.[4] Id. at 1-4. Defendant requested that the Circuit Court compel Plaintiffs to submit to

---

[3] Plaintiffs claim that Defendant filed two motions regarding arbitration, labeling them as "a Plea in Bar to Stay or Dismiss the Proceeding" and "A Motion to Compel Arbitration." Pl.'s Remand Br. 2, ECF No. 11. However, Plaintiffs' argument for why these filings waive the right to removal treats them as one motion filed as a plea in bar. See id. Regardless of the exact language Defendant used in the title of its motion in State Court, the plea in bar and motion to compel arbitration in Virginia are ordinarily treated as one motion filed as a plea in bar. See, e.g., Foster v. GGNSC Portsmouth, LLC, 94 Va. Cir. 416 (2016); Gibson v. Med. Facilities of Am., Inc., 80 Va. Cir. 56 (2010).

[4] The Arbitration Agreement states:

> 1. AGREEMENT TO ARBITRATE. Should a dispute arise between the Parties, they desire to avoid costly and time-consuming litigation. *Resident and [Dominion Village] agree that any claims, controversies, or disputes arising between them involving a potential monetary amount in excess of $25,000 shall be resolved exclusively by binding arbitration.* . . . Neither Resident nor [Dominion Village] will be permitted to pursue court action regarding these claims, controversies or disputes.

Ex. A ¶ 1, ECF No. 1-3 (emphasis in original).

arbitration and that the Court stay or dismiss the proceedings pending the completion of arbitration. Id. at 4. In the Demurrer, Defendant asserts that, as a claim for punitive damages cannot stand without a compensatory damages award for a common law tort claim, Plaintiffs' punitive damages claim related to a breach of contract fails. Id. at 5-6. In Defendant's answer, Dominion Village argues that Plaintiffs' complaint is barred by the Arbitration Agreement, that Plaintiffs committed the first material breach of the Residency Agreement, that Plaintiffs have failed to exhaust administrative remedies, that Plaintiffs have failed to mitigate their damages, and that Plaintiffs are not entitled to recover punitive or exemplary damages. Id. at 8-9.

On February 21, 2018, Dominion Village removed the instant action to federal court based on diversity jurisdiction. See Notice of Removal, ECF No. 1. On March 8, 2018, Defendant filed the instant Motion to Compel Arbitration. ECF No. 6. Two weeks later, Plaintiffs responded in opposition, arguing that the arbitration agreement cannot be enforced because (1) the agreement was not fully executed because Mrs. Lovelady did not sign the agreement on behalf of Mr. Lovelady as his attorney-in-fact; (2) the arbitration agreement cannot provide relief for Plaintiffs' punitive damages claim; (3) the arbitration agreement is unconscionable; and (4) Defendant waived the right

to arbitrate by pursuing a course of litigation in state and federal court. See Pls.' Opp'n Mot. Compel Arb. 1, ECF No. 13. In late March, Defendant filed its reply brief. ECF No. 15.

Defendant also filed its Motion to Dismiss Plaintiffs' Punitive Damages Claim in March 2018. ECF No. 9. Later that month, Plaintiffs filed their opposition. ECF No. 12. Therein, Plaintiffs argue that, under certain exceptional circumstances, a breach of contract may amount to an independent, willful tort for which punitive damages may be awarded. Id. at 1. Plaintiffs claim that Defendant's breach of contract, when combined with its alleged violation of its statutory duty to protect Mr. Lovelady from reprisal, amount to an independent tort. Id. at 2-3. On March 28, 2018, Defendant filed its reply brief. ECF No. 16. Defendant argues that this is a garden-variety breach of contract dispute for which punitive damages may not be imposed, and also notes that, even if Defendant has violated 22 Va. Admin. Code 40-73-550(B), neither a private right of action nor punitive damages are authorized to redress a violation of that provision. Id. at 2-3.

On March 9, 2018, Plaintiffs filed their Motion to Remand. ECF No. 11. Plaintiffs claim that this suit must be remanded because Defendant waived its right to remove by taking "substantial defensive action" in state court before petitioning for removal. Id. at 1. On March 23, 2018, Defendant responded

in opposition. ECF No. 14. On March 29, 2018, the deadline for Plaintiffs' response passed without Plaintiffs filing a reply brief regarding the Motion for Remand.

Having been fully briefed, the instant motions are ripe for disposition.

## II. MOTION TO REMAND

As noted above, Defendant has removed this action to federal court based on diversity jurisdiction. The parties appear to agree that they are completely diverse and that the amount in controversy exceeds $75,000. Plaintiffs, however, argue that Defendant's filing of its Plea in Bar/Motion to Compel and Demurrer in state court before filing its notice of removal constitute "substantial defensive action" that waives its right to removal. See Pls.' Remand Br., ECF No. 11. Defendant responds by denying that its actions in state court constitute voluntary availment of the state court's jurisdiction. See Def.'s Remand Br., ECF No. 14.

### A.   LEGAL STANDARD

#### 1.   Diversity Jurisdiction and Removal

Federal district courts are courts of limited subject matter jurisdiction. United States ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 347 (4th Cir. 2009) (citing Exxon Mobile Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005)). They may exercise "only the jurisdiction authorized them by the United

States Constitution and by federal statute." Id. (citing Bowles v. Russell, 551 U.S. 205 (2007)). District courts may exercise diversity jurisdiction in civil actions between "citizens of different states . . . where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). If complete diversity and the appropriate amount in controversy requirements are met for a case that was initially filed in state court, a federal court may exercise jurisdiction over the case upon proper removal to federal court. 28 U.S.C. §§ 1441, 1446.[5] The federal removal statute provides as follows: "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

### 2. Waiver of a Party's Right to Removal

By statute, a defendant sued in state court has thirty days from the date it is served to file a notice of removal in the federal district court "for the district and division within which such action is pending." 28 U.S.C. § 1446(a), (b). "Although there is no statutory basis for remand due to a

---

[5] The parties do not dispute that federal question jurisdiction is not applicable here.

party's waiver of its right of removal, the Fourth Circuit Court of Appeals [has] recognized that a district court could find a waiver under common law, but only in very limited circumstances." Virginia Beach Resort & Conference Ctr. Hotel Ass'n Condo. v. Certain Interested Underwriters at Lloyd's, 812 F. Supp. 2d 762, 764 (E.D. Va. 2011) (internal quotation marks and citation omitted). To evaluate whether a defendant has waived its right to removal, the court must make "a factual and objective inquiry as to the defendant's intent to waive." Grubb v. Donegal Mut. Ins. Co., 935 F.2d 57, 59 (4th Cir. 1991) (citation omitted). A defendant "may [] waive its 30-day right to removal by demonstrating a 'clear and unequivocal' intent to remain in state court." Id. (citation omitted). A clear intent to remain in state court is shown when a defendant takes "substantial defensive action" before removal. Aqualon Co. v. Mac Equip., 149 F.3d 262, 264 (4th Cir. 1998). For example, a defendant seeking a final determination on the merits of the case in state court would waive the right to remove. Wolfe v. Wal-Mart Corp., 133 F. Supp. 2d 889, 893 (N.D.W. Va. 2001) (holding that the defendant's filing of a motion for summary judgment in state court constituted waiver).

A waiver of the right to removal "should only be found in extreme situations." Id. (internal quotation marks and citation omitted) (emphasis added). Remand based on waiver should occur

10

when justified by "the values of judicial economy, fairness, convenience and comity." Id. A court analyzing whether to remand based on a waiver must be mindful that "the guiding rationale behind the doctrine of waiver is concern for preventing a removing defendant from 'test[ing] the waters in state court and, finding the temperature not to its liking, beat[ing] a swift retreat to federal court.'" Small v. Ramsey, No. 1:10CV121, 2010 U.S. Dist. LEXIS 116179, at *14, 2010 WL 4394084 (N.D.W. Va. Nov. 1, 2010) (quoting Estate of Krasnow v. Texaco, Inc., 773 F. Supp. 806, 809 (E.D. Va. 1991)).

## B. ANALYSIS

As noted above, the parties do not dispute that there is complete diversity or that the amount in controversy exceeds $75,000. See Compl. ¶¶ 1-3 (noting that Plaintiffs are citizens of Virginia and that Defendant is a limited liability company organized under the laws of Delaware); id. at 4 (demanding $344,194 in compensatory damages and $350,000 in punitive damages); Notice of Removal ¶ 8 (noting that Defendant is an LLC whose sole member, FSQ, Inc., is a Delaware corporation with its principal office in Newton, Massachusetts). Because the Court is satisfied that diversity jurisdiction is proper if Defendant has not otherwise waived its right to removal, the Court turns to the waiver issue.

Plaintiffs chiefly rely on two cases in support of their

position that Dominion Village waived its right to removal. The first case, Sood v. Advanced Computer Techniques, Corp., 308 F. Supp. 239, 240 (E.D. Va. 1969), involved a defendant who filed a notice of removal three days after filing an answer and three voluntary counterclaims. The plaintiff moved for remand on the ground that the filing of the counterclaims before the filing of the notice of removal constituted a waiver of the right to removal. Id. The court began its analysis by noting the principle established in Merchants' Heat & Light Co. v. James B. Clow & Sons, 204 U.S. 286, 289 (1907) that a defendant does not waive its right to removal where it merely files "pleadings to the merits, as required, after saving its rights." The Merchants' Heat court contrasted this with the filing of a counterclaim, as "by setting up its counterclaim the defendant became a plaintiff in its turn, invoked the jurisdiction of the court in the same action, and, by invoking, submitted to it." Id., 204 U.S. at 289. Applying this principle to the facts in Sood, the court noted that under Virginia law the defendant was not required to bring the counterclaims in the same action as the plaintiff's claims or face their loss. 308 F. Supp. at 240. However, because the filing of the defendant's counterclaims "was not compulsory but optional," the court found that the defendant had waived the right to removal because it had "invoked the jurisdiction of the State Court, submitted all

12

issues in that case for its determination, and thereby became a plaintiff." Id. at 242.

Plaintiffs' second case, Certain Interested Underwriters at Lloyd's, 812 F. Supp. 2d 762, likewise involved a motion for remand based on the filing of an answer and voluntary counterclaim before the notice of removal. The court ultimately granted the motion to remand based on two considerations. First, the court noted that "the defendant's filing of an answer was compulsory, and alone would not constitute a 'substantial defensive action' demonstrating waiver." Certain Interested Underwriters at Lloyd's, 812 F. Supp. 2d at 765 (citing Baldwin v. Perdue, Inc., 451 F. Supp. 373, 374-75 (E.D. Va. 1978)). However, because "Virginia court rules reflect that the defendant's filing of its Counterclaim was voluntary and permissive," the court found that "the defendant's voluntary availment of the state court's jurisdiction in filing its Counterclaim demonstrates the requisite clear intent to remain in state court." Id. at 765-66.

Second, the court distinguished the filing of a counterclaim before the notice of removal from the case in which a defendant files dispositive defensive motions like a demurrer or a plea in bar before the notice of removal. See id. at 766. In the latter case, the defendant must file the dispositive motions within 21 days after service of process or waive the

13

right to bring such motions. See Va. Supreme Court Rule 3:8. The *Certain Interested Underwriters at Lloyd's* court noted that a defendant's filing of a demurrer or a plea in bar before the notice of removal's thirty-day deadline could be characterized as "a protective measure taken to preserve the issue in the event that [the] Court remanded the case to state court[.]" 812 F. Supp. 2d at 766 (quoting *Abraham v. Cracker Barrel Old Country Store, Inc.*, No. 3:11cv182, 2011 WL 1790168 (E.D. Va. May 9, 2011)). Thus, when a defendant elects to file a counterclaim before the thirty-day deadline for removal, its actions are far more indicative of an intent to litigate the matter on the merits in state court than is the filing of a motion that will be lost if not filed before the deadline for the notice of removal.

*Sood* and *Certain Interested Underwriters at Lloyd's* hold that the filing of certain voluntary and permissive pleadings in state court — specifically voluntary counterclaims — can constitute a waiver of a defendant's right to removal. Plaintiffs seek to extend this principle to the filing of Defendant's other motions in this case. Because Defendant only needed to file an answer to avoid default, Plaintiffs claim that Defendant's demurrer and motion to compel arbitration are voluntary and permissive and thus waive the right to removal. Pls.' Remand Br. 2. Plaintiffs have not, however, cited any

14

caselaw supporting the proposition that the filing of these motions waives the right to removal.

Defendant distinguishes the above cases on the ground that their holdings apply only to the filing of voluntary counterclaims. See Def.'s Remand Br. 2, ECF No. 14. Defendant asserts that its actions show a "clear and unequivocal intent not to remain in state court – first moving to dismiss an improper punitive damages claim and second to litigate the matter in arbitration." Id. Defendant also claims that its motions are all responsive pleadings which do not waive its right to removal. Id.

**1. The Filing of the Demurrer Did Not Waive the Right to Removal**

District courts applying Virginia law have repeatedly found that the mere filing of a demurrer prior to the notice of removal does not waive the right to removal. See, e.g., Abraham, 2011 WL 1790168, at *5; Drexler v. Inland Mgmt. Corp., 509 F. Supp. 2d 560, 562 (E.D. Va. 2007); Sayre Enterprises, Inc. v. Allstate Ins. Co., 448 F. Supp. 2d 733 (W.D. Va. 2006); see also Krasnow, 773 F. Supp. 806 (finding that a defendant waives the right to removal after its demurrer has been ruled on in state court and contrasting that with the mere filing of a demurrer). Courts have cited various rationales for this rule, the first being that to hold otherwise would defeat Congress's intent in amending the notice of removal statute in 1965 to

change the time allowed for removal from 20 days to 30 days. See Sayre, 448 F. Supp. 2d at 736. Because Congress felt that a defendant should have up to thirty days to seek removal, finding that a defendant waives removal when it files a demurrer by the required deadline of twenty-one days would mean that a defendant would be forced to choose at twenty-one days to either remove the case or file a demurrer. Id. A second rationale for this rule is that many demurrers do not seek "a final determination on the ultimate merits of the controversy" and may affirmatively seek to remove the state court's ability to decide the matter. See, e.g., Abraham, 2011 WL 1790168, at *5 (finding that a motion to dismiss for lack of venue did not seek an adjudication of the merits of the case by the state court). A defendant hardly shows a clear and unequivocal intention to remain in state court when it files a motion seeking to not have the state court rule on the merits of the case. Third, courts have contrasted the case of the mere filing of a demurrer from one in which the state court rules on the demurrer. See, e.g., Krasnow, 773 F. Supp. 806. When a defendant seeks to remove a case to federal court after its demurrer has been ruled upon, its behavior falls within "the very definition of forum-shopping and is antithetical to federal-state court comity." Id. at 809.

The Court finds the above rationales to be persuasive for Defendant's filing of the demurrer seeking to dismiss

Plaintiffs' punitive damages claim. First, ruling that the filing of a demurrer, before the notice of removal, automatically constitutes a waiver of the right to removal, would undermine Congress's intent in setting the thirty-day deadline for removal. Second, because the state court did not rule on Defendant's demurrer, the concern about the likelihood of forum-shopping is not present here. Third, while it is true that the demurrer does address the merits of the punitive damages claim, Defendant's motion is ambiguous about Defendant's intentions because it could easily be seen as "a protective measure taken to preserve the issue in the event that [the] Court remanded the case to state court[.]" Abraham, 2011 WL 1790168, at *5 (E.D. Va. May 9, 2011)). Given the above, the Court finds that the filing of the demurrer does not waive the right to remove.

## 2. The Filing of the Plea in Bar/Motion to Compel Arbitration Did Not Waive the Right to Removal

As to the Plea in Bar/Motion to Compel Arbitration, Plaintiffs argue that Defendant waived its right to removal when it "sought affirmative relief from the State Court" by requesting an order staying or dismissing the proceedings and compelling arbitration. Pls.' Remand Br. 2, ECF No. 11. Plaintiffs have cited no authority in support of their position, and the Court is unaware of any binding or persuasive authority

about whether the filing of this kind of motion under Virginia law waives the right to removal. The Court's review of the relevant district court caselaw from outside Virginia did reveal at least one instance in which a court found that a motion to compel arbitration waives the right to removal, McKinnon v. Doctor's Assocs., Inc., 769 F. Supp. 216, 220 (E.D. Mich. 1991), but several other courts have more recently found that the filing of such motions does not constitute waiver. See, e.g., Category 5 Mgmt. Group, LLC v. National Cas. Ins., Co., No. 09-00633, 2010 WL 2330305, at *4 n.5 (S.D. Ala. May 20, 2010) ("the right to removal [i]s not waived by the filing of a motion to stay and compel arbitration"); Tillis v. Cameron, No. 1:07-cv-0078, 2007 WL 2806770, at *4 (M.D. Ala. Sept. 25, 2007) ("the filing of a motion to stay and compel arbitration has . . . been found insufficient to waive the removal right") (citing cases); Fain v. Biltmore Secs., 166 F.R.D. 39 (M.D. Ala. 1996). The primary reason courts have found that such motions do not constitute waiver is that, if the motion is successful, it precludes any further proceedings on the merits of the case by the state court. See Fain, 166 F.R.D. at 42.

Because the filing of the Plea in Bar/Motion to Compel sought to prevent the state court from ruling on the merits of the case, the Court is persuaded that this motion did not clearly and unequivocally show an intention to litigate the case

on the merits in state court. Cf. Abraham, 2011 WL 1790168, at *5 (finding similarly that a motion to dismiss for lack of venue did not seek an adjudication of the merits of the case by the state court and did not waive the right to removal). The Court thus concludes that the filing of the Plea in Bar/Motion to Compel did not waive the right to removal.

In view of the Court's above findings regarding the effect of the filing of Defendant's motions before the notice of removal, the Court **DENIES** Plaintiffs' Motion to Remand. ECF No. 10.

### III. MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY THIS ACTION PENDING BINDING ARBITRATION

Next, Defendant has moved to compel arbitration pursuant to the Federal Arbitration Act ("FAA") and to dismiss or stay this action pending binding arbitration. ECF No. 6. Defendant asserts that Plaintiffs' claim for compensatory damages falls within the scope of the Arbitration Agreement and that all prerequisites for arbitration of this claim have been met. Def.'s Mot. Compel Arb. Br. 2, ECF No. 7. Plaintiffs oppose the Motion to Compel arbitration and claim that the Arbitration Agreement in its entirety is unenforceable. See Pls.' Opp'n Mot. Compel Arb. 1, ECF No. 13.

### A. LEGAL STANDARD

The Federal Arbitration Act ("FAA") requires federal courts

to "rigorously enforce arbitration agreements according to their terms." Am. Exp. Co. v. Italian Colors Rest., 570 U.S. 228, 233 (2013) (internal quotation marks and citations omitted). Federal policy favors arbitration of disputes, and thus "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." O'Neil v. Hilton Head Hosp., 115 F.3d 272, 273-74 (4th Cir. 1997) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)). "Agreements to arbitrate are construed according to the ordinary rules of contract interpretation, as augmented by a federal policy requiring that all ambiguities be resolved in favor of arbitration." Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 710 (4th Cir. 2001) (citation omitted). Courts must compel arbitration if the moving party proves "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure ... to arbitrate the dispute." Adkins v. Labor Ready, Inc., 303 F.3d 496, 500-01 (4th Cir. 2002).

"The party seeking to compel arbitration bears the burden of establishing the existence of an arbitration provision that purports to cover the dispute." Scales v. SSC Winston-Salem Operating, Co., LLC, No. 1:17CV539, 2017 WL 4467278, at *2 (M.D.N.C. Oct. 5, 2017) (internal quotation marks and citation omitted). "If the party makes this evidentiary showing, the party opposing arbitration must come forward with sufficient facts to place the entitlement to arbitration in dispute." Id. (citing Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc., 807 F.3d 553, 564 (4th Cir. 2015)).

A court ruling on a motion to compel arbitration must determine whether the parties entered into a valid agreement to arbitrate. Whether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation. Adkins, 303 F.3d 496, 501. In Virginia, "[q]uestions concerning the validity, effect, and interpretation of a contract are resolved according to the law of the state where the contract was made." Seabulk Offshore, Ltd. v. Am. Home Assur. Co., 377 F.3d 408, 419 (4th Cir. 2004). Here, though the parties have not provided much detail on where the contract was made, the circumstances of the location of Defendant's facility and Plaintiffs' citizenship suggest it was made in Virginia. The parties also cite almost exclusively to authority addressing Virginia law, and thus the Court assumes for this

Opinion that Virginia law governs the Residency and Arbitration Agreements.

## B. ANALYSIS

Defendant has alleged that each of the four prerequisites for arbitration has been met, and Plaintiffs have not substantively contradicted any of Defendant's assertions. Turning to the first <u>Adkins</u> requirement, there clearly is a dispute between the parties, as evidenced by this lawsuit. <u>See</u> Compl., ECF No. 1-1; Answer, ECF No. 1-3.

Second, the Arbitration Agreement encompasses Plaintiffs' claims. The Arbitration Agreement states that the parties "agree that **<u>any claims</u>**, controversies or disputes arising between them involving a potential monetary amount in excess of $25,000 shall be resolved **exclusively** through arbitration." Arb. Agr. ¶ 1, ECF No. 1-3 (emphasis added). This sweeping language shows an intent to arbitrate all claims arising under the Residency Agreement. While it is true that the Arbitration Agreement prohibits the Arbitration Panel from imposing punitive damages, the lack of the availability of a particular remedy for a claim in arbitration does not mean that the claim itself would not be subject to arbitration. Based on the broad and unambiguous language of the Arbitration Agreement, the Court finds that it encompasses both Plaintiffs' claim for compensatory damages based on breach of contract and tort and

Plaintiffs' claim for punitive damages in tort.

Third, the transaction between the parties relates to interstate commerce. Courts in the Fourth Circuit have held that "[t]he term 'involving commerce' in Section 2 of the FAA is interpreted to 'signal the broadest permissible exercise of Congress' Commerce Clause power' to encompass activities within the flow of interstate commerce." Cox v. Assisted Living Concepts, Inc., No. 6:13-747-JMC-KFM, 2013 U.S. Dist. LEXIS 186127, at *7 (D.S.C. Nov. 19, 2013) (citations omitted). The Supreme Court explained in Citizens Bank v. Alafabco, Inc., 539 U.S. 52 (2003), that the FAA's reach extends to transactions "in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity in question would represent a general practice subject to federal control." 539 U.S. at 56-57 (internal quotation marks and citations omitted). With respect to nursing homes, courts have found that the "involving commerce" requirement is met if the nursing home makes out-of-state supply purchases, Canyon Sudar Partners, LLC v. Cole ex rel. Haynie, No. CIV.A. 3:10-1001, 2011 WL 1233320, at *10 (S.D.W. Va. Mar. 29, 2011) (citing cases), or if the nursing home has citizenship in one state and services customers in another state, received payments from out-of-state insurance companies, or received funds from federal Medicare and Medicaid programs, Fields v. Health Care & Ret. Corp. of Am.,

LLC, No. 2:15-cv-1547, 2015 U.S. Dist. LEXIS 59747, *9 (S.D.W. Va. May 7, 2015). Plaintiffs do not contest Defendant's representation that the Residency Agreement involves interstate commerce because Dominion Village (1) provides services to out-of-state customers, (2) purchases goods from out-of-state vendors, and (3) provides services covered in part by Medicare and Medicaid. Def.'s Mot. Compel Arb. Br. 5-6, ECF No. 7.

Lastly, the fourth requirement – a refusal or failure to arbitrate – has been satisfied. Defendant represents that Plaintiffs' counsel advised by a letter in October 2017 that Plaintiffs would not submit to arbitration and that they had taken the position that the Arbitration Agreement was unenforceable. Def.'s Mot. Compel Arb. Br. 6. Plaintiffs do not contest Defendant's factual allegations on this point, and thus it is clear that Plaintiffs are refusing to submit to arbitration. See also Pls.' Opp'n Mot. Compel Arb. Br., ECF No. 13.

Thus, all the Adkins requirements to compel arbitration have been met. While Plaintiffs have not denied that the Arbitration Agreement would, if otherwise enforceable, require arbitration, Plaintiffs advance four reasons for why the Arbitration Agreement is unenforceable: (1) the Arbitration Agreement is invalid with respect to Mr. Lovelady because his attorney-in-fact, Mrs. Lovelady, did not sign the Arbitration

Agreement on his behalf; (2) the Arbitration Agreement is unconscionable; (3) the Arbitration Agreement cannot provide relief for Plaintiffs' punitive damages claim; and (4) Defendant waived the right to arbitrate by pursuing a course of litigation in state and federal court. See Pls.' Opp'n Mot. Compel Arb. 1, ECF No. 13. The Court addresses each of Plaintiffs' arguments in turn.

### 1. Mrs. Lovelady Validly Consented to the Arbitration Agreement on Mr. Lovelady's Behalf

Plaintiffs first attack the Arbitration Agreement on the ground that Mrs. Lovelady did not sign the agreement on behalf of Mr. Lovelady. See Pls.' Opp'n Mot. Compel Arb. 1, ECF No. 13. Without Mrs. Lovelady signing the Arbitration Agreement in her capacity as Mr. Lovelady's attorney-in-fact, Plaintiffs claim that the Arbitration Agreement was not fully executed. Id. Plaintiffs do not deny that Mrs. Lovelady had authority to enter the agreement on behalf of Mr. Lovelady, but they assert that she simply failed to exercise that power.

To recap the relevant facts about the Arbitration Agreement, its signature page has spaces for four signatures: "Resident 1," "Resident 2," "Resident's Authorized Representative" and "Five Star Quality Care, Inc." See Arb. Agr. 13, ECF No. 1-3. The only signatures that appear are Mrs. Lovelady's on the "Resident's Authorized Representative" line,

and Deirdre Lund's on the "Five Star Quality Care, Inc." line. Id. The Arbitration Agreement also clarifies that it refers to Mr. Lovelady as the "Resident," Mrs. Lovelady as "Resident's Authorized Representative," and references both collectively as "the Resident." Id. at 11.

While the Arbitration Agreement might, standing alone, be ambiguous as to whether Plaintiffs assented to arbitration, a review of the Residency Agreement helps clarify the matter. As noted above, Mrs. Lovelady signed the Residency Agreement both in her capacity as the "Responsible Person" and as Mr. Lovelady's attorney-in-fact. See Res. Agr. 9, ECF No. 1-3. The Residency Agreement Signature Page states that by signing the agreement, Plaintiffs agreed "to all of the terms and conditions contained in this Agreement and its Attachments." Id. Among the conditions in the Residency Agreement is one stating that "[a]ll Attachments and other documents referenced in the Agreement are incorporated in this Agreement and constitute a part of it." Id. at 19. The Residency Agreement specifically references the Arbitration Agreement on the Residency Signature Page. Id. at 9. The Signature Page also includes a box, which Mrs. Lovelady initialed, next to the statement, "You acknowledge that you have signed a separate Arbitration Agreement." Id.

Viewing the above facts with all ambiguities construed in favor of arbitration, Choice, 252 F.3d 707, the Court concludes

that Mrs. Lovelady did manifest consent to the Arbitration Agreement on behalf of Mr. Lovelady and herself. As mentioned above, the Residency Agreement incorporates the Arbitration Agreement by reference. By signing the Residency Agreement both in her capacity as the "Responsible Person" and her capacity as Mr. Lovelady's attorney-in-fact, Mrs. Lovelady agreed that both she and her husband would be bound by all conditions of the Residency Agreement, including the Arbitration Agreement. Many federal courts, including the Fourth Circuit, have found that arbitration agreements that are incorporated by reference in similar circumstances are enforceable. See, e.g., Maxum Foundations, Inc. v. Salus Corp., 779 F.2d 974, 978 (4th Cir. 1985) ("It is well-settled that, under the Federal Arbitration Act, an agreement to arbitrate may be validly incorporated into a subcontract by reference to an arbitration provision in a general contract."); Gibbs v. PFS Investments, Inc., 209 F. Supp. 2d 620, 623 n.1 (E.D. Va. 2002). The Court thus concludes that the failure to have an additional signature in the Arbitration Agreement on the "Resident" line is not fatal to its enforceability, as the signatures that appear on that page are redundant with those that appear in the Residency Agreement.

Second, even ignoring that the Arbitration Agreement is incorporated by reference into the Residency Agreement, the fact that Mrs. Lovelady signed as Mr. Lovelady's "Authorized

Representative" in the Arbitration Agreement reflects that she was signing in her capacity as Mr. Lovelady's attorney-in-fact. Thus, at most, Plaintiffs can only argue that Mrs. Lovelady did not consent in her capacity as the Responsible Party that any claims that she might have under the Residency Agreement being subject to arbitration. Because this suit relates to alleged violations of Mr. Lovelady's contractual rights under the Residency Agreement, Plaintiffs' argument that the Arbitration Agreement cannot be enforced because of an alleged defect in the signatures on that document lacks merit.

## 2. The Arbitration Agreement is Not Unconscionable

Plaintiffs next claim that the Arbitration Agreement is unenforceable because it contains four offensive provisions that make it substantively unconscionable. See Pls.' Opp'n Mot. Compel Arb. 3, ECF No. 13. Specifically, they complain that the Arbitration Agreement (1) bars recovery of punitive damages, (2) waives the right to a jury trial, (3) permits Defendant unilaterally to amend the agreement, and (4) requires Plaintiffs to pay one-half the expenses of arbitration. Id. Plaintiffs also assert that the Court should find the Agreement is entirely unenforceable rather than sever the offensive provisions. Id. (citing Alexander v. Anthony International, 341 F.3d 256, 271 (3d Cir. 2003); Ingle v. Circuit City Stores, 328 F.3d 1165, 1180 (9th Cir. 2003)).

A claim that an arbitration agreement on the whole is unconscionable is a gateway issue for the court to decide. <u>See,</u> <u>e.g.</u>, <u>Pro Tech Indus. v. URS Corp.</u>, 377 F.3d 868, 872-73 (8th Cir. 2004); <u>Snowden v. CheckPoint Check Cashing,</u> 290 F.3d 631, 639 (4th Cir. 2002). The Fourth Circuit has explained that, under Virginia law, "[u]nconscionability is a narrow doctrine whereby the challenged contract must be one which no reasonable person would enter into, and the inequality must be so gross as to shock the conscience." <u>Sydnor v. Conseco Fin. Servicing</u> <u>Corp.</u>, 252 F.3d 302, 305 (4th Cir. 2001) (internal quotation marks and citations omitted).

In <u>Hooters of America v. Phillips,</u> 173 F.3d 933 (4th Cir. 1999), the Fourth Circuit provided guidance about the limited circumstances in which a court may find an arbitration agreement to be unconscionable. <u>Hooters</u> involved a set of arbitration rules with many offensive features: (1) the employee had to provide a detailed description of its claim and of all potential witnesses, but the employer did not have to file any responsive pleadings, notice its defenses, or list its witnesses; (2) the panel of three arbitrators had to be selected from a list pre-approved by the employer, but nothing prevented Hooters from filling the list with biased arbitrators; (3) the employer had a right to expand the scope of the arbitration to include any matter, while the employee was restricted to only raising

matters explicitly mentioned in its claim; (4) the employer could seek summary judgment while the employee could not; (5) the employer could record the arbitration proceedings while the employee could not; (6) the employer could bring suit in court to vacate or modify the arbitral award while the employee could not; (7) the employer could cancel the rules of arbitration upon 30 days notice, while the employee could not; and (8) the employer could amend the rules whenever it wished without providing notice to the employee, while the employee had no right to amend the rules. Id. at 938-39. Analyzing these rules, the Fourth Circuit first noted that arbitration agreements should not be invalidated for a mere failure to replicate a judicial forum. Id. at 940. Instead, the Fourth Circuit found that the arbitration rules were unconscionable "based on a multitude of biased and warped rules promulgated by Hooters which essentially created a 'sham [arbitration] system' which the court refused to enforce." Sydnor, 252 F.3d at 306. "The egregiously unfair arbitration rules in Hooters, however, provide only a limited departure from the general rule that arbitrators decide questions of fairness regarding arbitration proceedings." Id. (citing Hooters, 173 F.3d at 941). The Fourth Circuit has instructed that "[a]rbitration is not inherently unconscionable, and Hooters does not give a federal court license to make a 'full-scale assault' on arbitration."

Id. (quoting Hooters, 173 F.3d at 941).

As mentioned above, Plaintiffs first claim that the Arbitration Agreement is unconscionable because it bars recovery of punitive damages and waives the right to a jury trial. Plaintiffs are wrong for two reasons. First, courts applying Virginia law to punitive damages and jury trial waivers have found that such waivers are valid and not unconscionable. See, e.g., Wells Fargo Bank, Nat. Ass'n v. Smith, No. 3:10-CV-411, 2010 WL 4622176, at *4 (E.D. Va. Nov. 5, 2010) ("Virginia law readily permits waivers of punitive damages."); Rhodes v. Geeks on Call Holdings, Inc., No. 2:08CV575, 2009 WL 10688337, at *5 (E.D. Va. Feb. 6, 2009) (finding waivers of the rights to seek punitive damages and demand jury trial to be valid); Dunkin' Donuts Franchised Restaurants LLC v. Manassas Donut Inc., No. 1:07CV446 (JCC), 2008 WL 110474, at *4 (E.D. Va. Jan. 8, 2008) (same); Silver v. JTH Tax, Inc., No. CIV.A. 2:05CV126, 2005 WL 1668060, at *6-7 (E.D. Va. June 21, 2005) (Virginia and New York law) (same). The Court agrees with these other courts in finding that these waivers are not inherently unconscionable under Virginia law.

Second, unlike the provisions at issue in Hooters, which systematically granted the employer many procedural advantages, the two waivers do not hamstring Plaintiffs or otherwise allow Defendant to rig the arbitration proceedings in its favor. The

punitive damages waiver simply bars one possible remedy from being available in arbitration, but it does not undermine Plaintiffs' ability to show that there has been a breach of contract or tort for which damages may be awarded. The waiver of the right to demand a jury trial for claims that cannot be arbitrated similarly does nothing to advantage Defendant in the arbitration proceedings themselves. While these waivers are more favorable to Defendant than to Plaintiffs, they do not serve as an unfair advantage that would make any resulting arbitration a sham.

As to Defendant's right to amend the Arbitration Agreement, it is true that the Agreement provides that Defendant may unilaterally amend the Arbitration Agreement upon giving Plaintiffs 30-day written notice.[6]  Arb. Agr. ¶ 9, ECF No. 1-3. But unlike the provision in Hooters, the amendment provision here gives Plaintiffs the right to terminate the Arbitration Agreement for any reason if Defendant elects to amend it.  Id. This grants Plaintiffs far greater power to prevent abusive amendments than was available for the plaintiff in Hooters,

---

[6] Paragraph 9 of the Arbitration Agreement states:

> 9. AMENDMENT. This Agreement may be amended by Five Star upon thirty (30) days written notice to Resident. If Five Star provides notice to Resident that it intends to amend the Agreement, Resident may terminate the Agreement for any reason by providing written notice to Five Star within 30 days of receipt of Five Star' notice.

Arb. Agr. ¶ 9, ECF No. 1-3.

where Hooters could amend the arbitration rules at any time without consequence. The Court is thus not persuaded that this amendment provision renders the Arbitration Agreement "illusory and unenforceable." Pls.' Opp'n Mot. Compel Arb. 3.

Finally, Plaintiffs complain about the Arbitration Agreement's fee-splitting provision.[7] Id. Under this provision, the parties agree to split the costs of arbitration equally, but if Plaintiffs cannot pay their share, Defendant agrees to cover all the costs of arbitration. See Arb. Agr. ¶ 3, ECF No. 1-3. If Defendant pays Plaintiffs' share, however, the default rule that the Plaintiffs get to choose whether the panel will be one or three neutral arbitrators is reversed, and instead Defendant chooses whether the panel will have one or three "neutral" arbitrators. Id. Here, Plaintiffs represent that they cannot pay one-half of the expenses of the arbitration, and they note that this allows Defendant to choose the number of members on the neutral arbitration panel. Pls.' Opp'n Mot. Compel Arb. 3.

---

[7] Paragraph 3 of the Arbitration Agreement states:

> 3. COSTS OF ARBITRATION. Resident and Five Star shall equally bear the costs and expenses of arbitration proceedings, including all costs of administration, all expenses of the Panel, and all hearing costs. Where the Resident supplies an affidavit that they do not have the means to pay their one half of the arbitration expenses, Five Star will also pay the Resident's share of the costs and expenses. Where Five Star also pays the Resident's share of the costs and expenses, then regardless of Paragraph 2 above, Five Star shall have the right to choose whether the Panel shall be one or three neutral arbitrators.

Arb. Agr. ¶ 3, ECF No. 1-3.

Plaintiffs have not explained why this would taint the arbitration proceedings. The Arbitration Agreement requires that the members of the panel be chosen by the American Arbitration Association or by mutual agreement between the parties. See Arb. Agr. ¶ 2. Based on the neutral method used to select the members of the panel, there appears to be minimal danger to the neutrality of the proceedings in giving Defendant the right to choose between having one or three neutral panel members.

Viewing the four allegedly offensive provisions together, the Court finds that they do not so undermine the fairness of the arbitration proceedings as to make the Arbitration Agreement unconscionable. To the extent that Plaintiffs continue to object to certain provisions within the Agreement, such objections are for the Arbitration Panel to decide in the first instance. See Hooters, 173 F.3d at 941. "Only after arbitration may a party then raise such challenges if they meet the narrow grounds set out in 9 U.S.C. § 10 for vacating an arbitral award." Id.

### 3. Defendant has Not Waived its Right to Arbitrate

Plaintiffs' final argument against granting the Motion to Compel Arbitration is that Defendant waived the right to arbitrate by litigating in state and federal court. Pls.' Opp'n Mot. Compel Arb. 3. Plaintiffs' argument on this issue is like

their argument about the alleged waiver of the right to removal, as they again rely on Defendant's actions in filing the demurrer and motion to dismiss and removing this case to federal court to show that Defendant desires to litigate the matter rather than arbitrate. Id.

A party may waive its right to compel arbitration if the party "so substantially utiliz[es] the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay." MicroStrategy, Inc. v. Lauricia, 268 F.3d 244, 249 (4th Cir. 2001) (quoting Maxum Foundations, Inc. v. Salus Corp., 779 F.2d 974, 981 (4th Cir. 1985)). When the party seeking arbitration has invoked the "litigation machinery" to some degree, "[t]he dispositive question is whether the party objecting to arbitration has suffered actual prejudice." Id. (citation omitted)(emphasis in original). The Fourth Circuit has "consistently held that because of the strong federal policy favoring arbitration," a court should not "lightly infer the circumstances constituting waiver." Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc., 380 F.3d 200, 204 (4th Cir. 2004) (internal quotation marks and citation omitted). "The party opposing arbitration on the basis of waiver thus bears a heavy burden." Id. (internal quotation marks and citation omitted).

Plaintiffs have made no showing that they have suffered actual prejudice from any of Defendant's actions in invoking the "litigation machinery" of either the state or federal courts. Moreover, Defendant promptly sought arbitration both in state and federal courts, as its motions to compel arbitration were Defendant's first substantive motions filed before each court. Given these facts and the complete absence of an explanation from Plaintiffs detailing how Defendant's actions here have caused them actual prejudice, the Court finds that Plaintiffs have not met the "heavy burden" of showing that Defendant waived its right to compel arbitration.

For the foregoing reasons, the Court finds that Plaintiffs' claims in their entirety should be referred for arbitration. Defendant has shown that the _Adkins_ prerequisites for granting the Motion to Compel Arbitration have been met, and Plaintiffs have not carried their burden in showing that the Arbitration Agreement is unenforceable. Accordingly, the FAA directs that this case should be stayed until the parties complete arbitration. _See_ 9 U.S.C. § 3.

### IV. CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiffs' Motion to Remand. ECF No. 10. The Court also **GRANTS** Defendant's Motion to Compel Arbitration, ECF No. 6, **STAYS** these proceedings pending completion of arbitration, and **DIRECTS** the

Clerk of Court to remove this case from the active docket. Because the Court has referred all of Plaintiffs' claims for arbitration, Defendant's Motion to Dismiss Plaintiffs' Punitive Damages Claim is **DENIED AS MOOT.** ECF No. 8. Finally, Defendant's request for a Protective Order is also **DENIED AS MOOT.** ECF No. 20. The parties are **DIRECTED** to file a status report with the Court every sixty days from the date of this Opinion and Order.

The Clerk is **DIRECTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/

Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
July 25, 2018